IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ODYSSEY MANUFACTURING CO., a Florida
corporation,

               Plaintiff,             CASE NO.

vs.

OLIN CORPORATION, a Virginia corporation,

               Defendant.

_____/

## VERIFIED COMPLAINT FOR SPECIFIC PERFORMANCE, INJUNCTIVE RELIEF AND FOR DAMAGES

Plaintiff, ODYSSEY MANUFACTURING CO. ("Odyssey" or Plaintiff), through its attorneys, hereby sues Defendant, OLIN CORPORATION ("Olin" or Defendant), and states the following for its Verified Complaint for Specific Performance, Injunctive Relief and for Damages:

### THE PARTIES, JURISDICTION AND VENUE

1.    Plaintiff Odyssey is a Florida corporation with a principal place of business at 1484 Massaro Boulevard, Tampa, Fl 33619, which is in Hillsborough County, Florida. Odyssey was incorporated in 1998 and began operations at its "state of the art" bleach manufacturing facility utilizing chlor-alkali technology for the production of bulk sodium hypochlorite in March 2000.

2.    Defendant Olin is a Virginia corporation with a principal place of business at 190 Carondelet Plaza, Clayton Missouri 63105. Olin has during all

material times hereto been registered with the Florida Secretary of State as a foreign corporation that is qualified to do business in Florida, and can be served through its registered agent in Florida, CT Corporation System, 1200 S. Pine Island Road, Plantation, Fl 33324.  Olin regularly operates, conducts and engages in business throughout the State of Florida.  Olin entered into a 10-year Contract with Odyssey to, *inter alia*, be Odyssey's exclusive supplier of Olin's HyPure® Bleach (a proprietary form of sodium hypochlorite) for the entire State of Florida.  As a result, including Olin's registration to do business in Florida, Olin is subject to general and specific jurisdiction in Florida.  The Middle District of Florida is also where a substantial part of the actions giving rise to this lawsuit took place.

3.    Venue in this action is proper in the Middle District of Florida under 28 U.S.C. § 1391, which makes a corporate defendant subject to suit in any District in which it is subject to personal jurisdiction, and also because, without limitation: (a) this cause of action accrued in Hillsborough County, Florida because, *inter alia*, Olin breached its Contract with Odyssey in Hillsborough County by failing to perform acts required by the Contract to be performed in Hillsborough County, and material facts and circumstances giving rise to these causes of action occurred in Hillsborough County; (b) Olin also operates and transacts business in Hillsborough County, including Olin's substantial business with Odyssey that is carried out under the operative Contract, which involves Olin's Odyssey's headquarters and manufacturing facility is located in Hillsborough County; (c) Olin's operation of a tank in the Port of Tampa that receives ships and distributes

caustic soda throughout the State of Florida, and, for decades, Olin's transmission of caustic soda and chlorine railcars into the State of Florida; and (d)) Odyssey's receipt of product deliveries by railcar from Olin at Odyssey's distribution terminals in Florida, including but not limited to the distribution terminal located in Hillsborough County that was constructed by Odyssey to service the Olin Contract which is the subject matter of this dispute.   Accordingly, Olin's performance of its obligations owed to Odyssey under the Contract have a substantial connection to Hillsborough County, and that connection renders Hillsborough County to be the place where the property in litigation is located.

4.     This is an action for both specific performance, injunctive relief, and monetary damages, which damages will exceed $1,000,000.00.

5.     Paragraph 15 of the Contract provides it is governed by Tennessee law, and Paragraph 15 of the Sales Contact further provides that the contracting parties "consent to the jurisdiction of the state and federal courts of the State of Tennessee."  However, that consent provision is **<u>not</u>** a mandatory forum selection clause, so there is no requirement that this action be brought in Tennessee.

6.     This Federal Court in the Middle District of Florida is a court of competent jurisdiction over this controversy, and Olin is subject to the long-arm jurisdiction of this Court pursuant to Section 48.193, Fla. Stat.. This Court has diversity jurisdiction under 28 U.S.C. § 1332.   There is complete diversity of citizenship between Odyssey and Olin. The amount in controversy far exceeds the jurisdictional threshold of $75,000.00, exclusive of interest and costs.

## FACTUAL BACKGROUND

7.     Odyssey is a leading supplier of sodium hypochlorite in the State of Florida, and its customer base includes, but is not limited to, approximately 60% of the water and wastewater plants that use sodium hypochlorite to treat and disinfect drinking water and wastewater discharge. Odyssey has numerous contracts to supply sodium hypochlorite to its customers throughout the State of Florida.

8.     Olin promotes itself as the No. 1 U.S. producer of chlor alkali products and chlorine derivatives, the nation's largest manufacturer of chlorine, and the world's largest sodium hypochlorite supplier. See e.g. https://olinchloralkali.com/products/sodium-hypochlorite/.

9.     Olin produces a proprietary sodium hypochlorite product with the trade name HyPure® Bleach. HyPure® Bleach is a known in the industry to be a high quality product that is both very stable and very clean.

10.     On or about February 24, 2016, Olin and Odyssey executed a written requirements contract wherein Olin promised to sell and deliver, and Odyssey agreed to purchase and take delivery of certain quantities of Olin's HyPure® Bleach for a 10-year period beginning October 1, 2016. A true and correct copy of that Contract SH-14-179, dated February 25, 2016, (the "Contract"), which remains in force in accordance with its written terms, is available to both parties  but is not being attached to this Complaint because it states on p. 3 "[t]he terms and conditions contained in this Agreement, including but not limited to Produce price

4

guarantees, take or pay provisions, pricing and sale amounts are considered proprietary confidential business information, trade secrets, and shall not be revealed by any of the parties to any third parties (third parties not to include affiliates or subsidiaries of a party)".   Odyssey reserves the right to place the Contract before this Court to prosecute this lawsuit, such filing to made under seal if this Court determines that it meets Middle District of Florida rule requirements.

11.    Olin's method of shipment of the HyPure® Bleach is by rail car.

12.    In furtherance to reaching a 10-year agreement, and to secure Olin's commitment to supplying the quantities of HyPure® Bleach needed by Odyssey, Odyssey committed to purchase a minimum quantity of HyPure® Bleach annually, which quantities are stated in the Contract and which increased as the years passed.  *See* Contract 1 at p.1.

13.    Also in furtherance to reaching a 10-year agreement, and to secure Olin's commitment to supplying the quantities of HyPure® Bleach needed by Odyssey, Odyssey agreed to a "take or pay" provision, as follows:

> This is a "Take or Pay" agreement.  Should Buyer fail to take, through no fault of Seller, the sum of the minimum EQW during any contract year, Buyer shall pay Seller the Take or Pay sum of $300.00 per EQW for every EQW less than the minimum specified for that period upon receipt of invoice by Seller ("Take or Pay").

> Contract 1, p. 3.

14.    To facilitate the receipt of the agreed-to quantities of HyPure® Bleach by rail car as required by the Contract, Odyssey procured large sites of land, including in Hillsborough County, and Odyssey and its partners engineered, built

and installed four railcar terminals in Florida to accept deliveries of Olin's HyPure® Bleach at a total cost to Odyssey of over $20 million. These "state-of-the-art" terminals unload and precisely dilute HyPure® Bleach to on-site storage tanks from Olin's railcars in a timely and efficient manner so that the railcars can be returned quickly. Each terminal has a large tank farm for storage with computerized loading stations and state-of-the-art Durco Titanium pumps to load tankers for delivery to end users.

15.    Commencing in October 2016 and continuing to present, Odyssey ordered and purchased HyPure® Bleach from Olin in varying quantities on a regular basis, amounting to several rail cars each month. The measurement used for the quantity of HyPure® Bleach is stated as "EQW" and one rail car generally equates to 18 EQW.

16.    Pursuant to the Contract, Odyssey provides Olin with 12-month rolling forecasts of the quantities of HyPure® Bleach projected to be needed for each month. These rolling forecasts are provided to Olin at least quarterly each year, and most years the rolling forecasts are updated and provided almost every month.

17.    During low-need months, such as March, the monthly quantity ordered range is in the range of 1836 EQW.

18.    During the high-need months of May through October, the monthly quantities ordered by Odyssey range between approximately 2070 EQW and 2430 EQW. By way of example, for the months of May through October in 2021 and

2022, the quantities ordered were:

| Month - Year | Rail Cars ordered | EQW (at 18 EQW per rail car) |
|---|---|---|
| May 2021 | 115 | 2070 |
| June 2021 | 123 | 2214 |
| July 2021 | 131 | 2358 |
| August 2021 | 131 | 2358 |
| September 2021 | 119 | 2142 |
| October 2021 | 113 | 2034 |
| | | |
| May 2022 | 130 | 2340 |
| June 2022 | 124 | 2232 |
| July 2022 | 143 | 2574 |
| August 2022 | 135 | 2430 |
| September 2022 | 132 | 2376 |
| October 2022 | 113 | 2034 |

19.     The reason for increased volume requirements in the months of May through October in Florida is because of Florida's high heat during these months. Bleach (sodium hypochlorite) degrades in heat. Heat also enhances the growth of bacteria and algae in water plants, wastewater plants and recreational parks, therefore requiring more bleach (sodium hypochlorite). In addition, Florida residential and commercial water usage, and therefore the need for sodium hypochlorite, is greatly increased during the months of May through October.

20.     Olin does not always deliver the exact amount of HyPure® Bleach ordered by Odyssey each month, and Olin is frequently late. Municipal water plants require on-time deliveries to avoid the required issuance of boil water notices, and municipal wastewater plants require on-time deliveries to avoid large fines being levied by the Department of Environmental Protection.

21.     In months that Olin delivers less than the quantity ordered, Odyssey sometimes needs to obtain sodium hypochlorite from other sources, but such product is not HyPure® Bleach. Odyssey incurs substantial extra costs when sodium hypochlorite is obtained from other sources.  If Olin ships the required product, but ships it late, Odyssey has to buy from the market at much higher costs because they cannot take the chance causing a boil water notice at a water plan or a Department of Environmental Protection violation at a wastewater plan. Olin frequently ships late.

22.     On April 6, 2023, Odyssey provided Olin with an updated rolling 12-month forecast, therein projecting the following quantity needs for May through October 2023:

| Month - Year | Rail Cars ordered/projected | EQW (at 18 EQW per rail car) |
|---|---|---|
| May 2023 | 119 | 2,142 |
| June 2023 | 128 | 2,304 |
| July 2023 | 132 | 2,376 |
| August 2023 | 132 | 2,376 |
| September 2023 | 116 | 2,088 |
| October 2023 | 122 | 2,196 |

23.     In fact the Contract expressly obligates Olin to supply Odyssey up to 3,500 EQW of HyPure® Bleach that Odyssey has requested within any 30 day period during Years 5-10 of the Contract.

24.     On or about April 13, 2023, Olin delivered a letter to Odyssey stating that, commencing in May 2023, Olin would limit its monthly supply and delivery

8

of HyPure® Bleach to Odyssey to 1,930 EQW per month. Olin provided only 17-days' notice of this unilateral change which Olin was fully aware, or should have been aware, was not authorized under the Contract.

25.    The unilateral reduction by Olin of the supply of HyPure® Bleach, especially just as the hotter months and higher-volume needs, begin, will cause irreparable harm to Odyssey and its many customers around the State. This reduction will, *inter alia*, impact the public health and safety because Odyssey supplies sodium hypochlorite to approximately 60% of the water and wastewater plants in the State of Florida, which use the sodium hypochlorite to treat and disinfect drinking water and wastewater discharge water.

26.    Olin's reduction of the supply of HyPure® Bleach is a breach of the Contract.

27.    Olin advised Odyssey that its reduction was authorized by Section 2(b) of the pre-printed Terms and Conditions to the Contract. However, Olin has misinterpreted the Contract, because Section 2(b) of Olin's standard, pre-printed Terms and Conditions cannot be invoked to contradict and terms of the Contract printed above the parties' signatures.

28.    Specifically, the Contract provides:

THAT STANDARD SELLER TERMS AND CONDITIONS THAT FOLLOW TOGETHER WITH ANY APPENDICES ATTACHED HERETO AND REFERRED TO HEREIN ARE A PART OF THIS CONTRACT AS EFFECTIVELY AS THOUGH THEY PRECEDED THE SIGNATURES OF THE PARTIES. SHOULD THERE BE A CONFLICT BETWEEN THE SELLER'S PRE-PRINTED TERMS AND CONDITIONS, THE APPENDICES AND THE TERMS AND

CONDITIONS WRITTEN ABOVE, THE ORDER OF PRECEDENCE SHALL BE FIRST THE PRE-PRINTED **TERMS AND WRITTEN ABOVE**, THEN THE APPENDICES **AND LAST** THE SELLER'S ATTACHED PRE-PRINTED TERMS AND CONDITIONS.

Contract 1 at p. 4 (bolding and underlining added).

29.    Accordingly, in the event of any conflict between the terms and conditions contained within p.1-4 of the Contract, which precede the signatures of both parties, and Olin's pre-printed terms and conditions at p. 5-6 of the Contract, the Contract expressly states that terms and conditions within p.1-4 of the Contract shall take precedence and control.

30.    The terms written above the parties' signatures includes the quantities committed to be sold by Olin to Odyssey for the pertinent time period as follows:

October 1, 2020 through September 30, 2026: a minimum of 8,064 EQW of HyPure® Bleach with an option to purchase up a maximum of 25,200 EQW of HyPure® Bleach.

In no event shall Seller be obligated to supply nor shall Buyer be obligated to take delivery of quantities in excess of 20% of the annual forecasted quantity in any thirty (30) day period in Years 1-4 **and 3,500 EQW in any thirty (30) day period in Years 5-10.**

For planning purposes, Buyer will provide Seller regular twelve (12) month rolling forecasts.  These forecasts will be updated no less than thirty (30) days prior to each calendar quarter.

Buyer shall give Seller 30 days' notice of the amount to be shipped each month.  **Seller shall ship this amount subject to the maximum quantities** set forth herein and any force majeure events.

Contract 1 at p.1 (bolding added).

31.    The terms written above the parties' signatures expressly, including

those excerpted in paragraph 30 of the Complaint hereinabove, control over the Olin's pre-printed terms and conditions within p. 5-6 of the Contract.  Thus, Section 2(b) of Olin's standard, pre-printed Terms and Conditions (which purport to allow Olin to limit the quantity to be shipped each month to the average of the monthly quantities purchased by Odyssey for the  preceding two contract months) cannot be invoked to contradict Olin's obligation to ship the forecasted quantity up to 3,500 EQW in any thirty (30) day period between 2023 and 2026, which are within Contract Years 5-10.

32.    On April 18, 2023, Odyssey contacted Olin and requested that Olin reconsider its decision to curtail service to Odyssey as set forth in Olin's letter dated April 13, 2023. Olin responded on April 24, 2023, rejecting Odyssey's request.

33.    Odyssey has performed its obligations under the Contract.

34.    Odyssey has never once failed to take and pay for the minimum EQW during any contract year, thus the Take or Pay provision has never been triggered. In fact, Odyssey often orders more quantities of HyPure® Bleach than Olin delivers.

35.    All conditions precedent to the initiation and maintenance of this action and under all Contracts referenced herein have occurred, been performed, been excused or been waived.

## <u>COUNT I</u>
### (Specific Performance and Injunctive Relief)

36.    Odyssey realleges and incorporates paragraphs 1–35 as if set forth herein.

37.    This is an action for specific performance and injunctive relief.

38.    The Contract entered into by and between Olin and Odyssey is a valid and binding contract.

39.    Odyssey performed it obligations under the Contract.

40.    Olin has breached the Contract by declaring it would limit its monthly supply and delivery of HyPure® Bleach to Odyssey to 1,930 EQW per month from May 2023 forward. Olin's breach is creating a shortfall in the quantity of HyPure® Bleach required by Odyssey.

41.    HyPure® Bleach is a proprietary product produced only by Olin. Odyssey cannot obtain Olin's HyPure® Bleach from a source other than Olin.

42.    The process used by Odyssey to prepare HyPure® Bleach for delivery to customers is unique to HyPure® Bleach.

43.    By limiting its supply of HyPure® Bleach to Odyssey to 1930 EQW per month, Olin is creating a shortfall of product to Odyssey for the future months of the remaining years of the Contract. For example, for the month of July 2023, the shortfall is projected to be 446 EQW, which is nearly 25 rail cars and 875,000 gallons of sodium hypochlorite. For just the upcoming high-needs months in 2023, May through October, the shortfall will be 1902 EQW, equating to 105.66 rail cars,

which in turn equates to 3,698,100 gallons of sodium hypochlorite.

44.    Odyssey is not able to obtain the HyPure® Bleach from any source other than Olin, thus it will be unable to satisfy its contract supply requirements with its customers around the State of Florida during the months of (at least) May to October. The shortfall of millions of gallons of sodium hypochlorite will cause irreparable harm to Odyssey and its customers, especially because many are municipal water and wastewater plants, which need the sodium hypochlorite to treat and disinfect the water at their facilities.

45.    If Olin is not required to fulfill its contractual obligations and supply the quantities of HyPure® Bleach requested by Odyssey, or stated differently, if Olin is not compelled by mandatory injunction to supply the HyPure® Bleach requested by Odyssey, Odyssey's reputation and goodwill with its customers, will be destroyed. It will be impossible to completely quantify the total impact this loss or reputation and goodwill will cause because it will have a lasting and compounding effect as years go by.  Odyssey's core strength throughout its more than 23 years of business has been service and reliability, the motto being that "Odyssey always delivers."  Olin's unilateral anticipatory breach and refusal to perform will irreparably cripple Odyssey's business.

46.    In addition, the harm will not only impact Odyssey, but also its customers and the public directly, as many of the State's water and wastewater treatment plants rely upon Odyssey for the provision of sodium hypochlorite on a continuous and timely basis. Indeed, the shortage incurred by Odyssey will have a

cascading effect even to Florida's tourist industry, as many recreational venues (such as water parks and resort swimming pool) rely upon Odyssey's provision of the sodium hypochlorite to run and keep their facilities open to the public on a daily basis. A foreseeable consequence of Olin's breach is that Odyssey may be unable to perform on its various municipal water and wastewater contracts, the terms of which extend for years, which will jeopardize public safety and irreparably harm Odyssey and its Florida customers, which harm can be mitigated if the Court enters a mandatory injunction and specifically enforces the Contract.

47.    No harm or prejudice will be suffered by Olin by the issuance of a mandatory injunction requiring Olin to supply the quantities of HyPure® Bleach ordered by Odyssey, because Olin will be paid pursuant to the Contract terms for the product, and delivery of the product in the quantities requested by Odyssey, so long as not exceeding the maximum, was expressly agreed to by Olin.  According to public statements by Olin's CEO, Scott M. Sutton, Olin is currently running its plants at less than 60% to reduce market supply and increase pricing which Olin calls "adding value."

48.    The harm incurred as described herein, including but not limited to in paragraphs 40-45 above, cannot be remedied through monetary damages. Even if Odyssey uses every available resource to obtain sodium hypochlorite from other sources, none of that sodium hypochlorite will be HyPure® Bleach, and it will not be possible for Odyssey to obtain the quantities needed to cover the shortfall created by Olin. The harm described above, including to Odyssey's goodwill and

reputation, as well as to its contracts and its customers' ability to operate their own facilities, will be irreparably damaged.  The public interest is best served by the enforcement of the Contract in accordance with its terms, and granting specific performance and the injunctive relief requested in furtherance of the distribution of sodium hypochlorite by Odyssey to customers throughout Florida to treat and disinfect drinking water and wastewater discharge.

WHEREFORE, Odyssey requests this Court to enter a judgment for specific performance and an injunction in Odyssey's favor, mandating that Olin comply with the Contract and fulfill Odyssey's orders for HyPure® Bleach consistent with the Contract, award Odyssey its court costs, and grant such other and additional relief as this Court may deem just and proper.

### COUNT II
**(Breach of Contract)**

49.    Odyssey realleges and incorporated paragraphs 1–35 as if set forth herein.

50.    This is an action for damages in excess of $75,000 exclusive of interest and costs.

51.    The Contract entered into by and between Olin and Odyssey is a valid and binding contract.

52.    Odyssey performed it obligations under the Contract.

53.    Olin has breached the Contract by declaring it would limit its monthly supply and delivery of HyPure® Bleach to Odyssey to 1,930 EQW per month from

May 2023 forward. Olin's breach is creating a shortfall in the quantity of HyPure®
Bleach required by Odyssey.

54.    Olin has also breached the Contract by failing to supply the requested
quantity of HyPure® Bleach in past months. One such example was August of
2022, when Olin supplied several less rail cars of HyPure® Bleach than had been
ordered by Odyssey.

55.    Olin has also breached the Contract by improperly invoking the force
majeure provision of the Contract.

56.    HyPure® Bleach is a proprietary product produced only by Olin.
Odyssey cannot obtain Olin's HyPure® Bleach from a source other than Olin.

57.    The process used by Odyssey to prepare HyPure® Bleach for delivery
to customers is unique to HyPure® Bleach.

58.    By limiting its supply of HyPure® Bleach to Odyssey to 1930 EQW
per month, Olin is creating a shortfall of product to Odyssey for the future months
of the remaining years of the Contract. For example, for the month of July 2023,
the shortfall is projected to be 446 EQW, which is nearly 25 rail cars and 875,000
gallons of sodium hypochlorite. For just the upcoming high-needs months in 2023,
May through October, the shortfall will be 1902 EQW, equating to 105.66 rail cars,
which in turn equates to 3,699,100 gallons of sodium hypochlorite.

59.    Because Odyssey is not able to obtain the HyPure® Bleach from any
source other than Olin, thus it will be unable to satisfy its contract supply
requirements with its customers around the State of Florida during the months of

(at least) May to October. The shortfall of millions of gallons of sodium hypochlorite will not only cause irreparable harm to Odyssey and its customers, but will also cause Odyssey to incur significant expense in trying to obtain replacement sodium hypochlorite from other sources. A foreseeable consequence of Olin's breach is that Odyssey may be unable to perform on its various municipal water and wastewater contracts, the terms of which extend for years, which will irreparably damage and cause lost profits for Odyssey.

60. Because HyPure® Bleach is different from other sources of sodium hypochlorite, Odyssey must process HyPure® Bleach differently from how it processes other sodium hypochlorite obtained from other suppliers. The change in processing impacts the quantities needed to be purchases, as well as the processing (turn-around) time before Odyssey can deliver the product to its customers. Each of these factors increases the costs Odyssey will expend to obtain and delivery sodium hypochlorite to its customers to satisfy Odyssey's contracts with those customers. Odyssey is also in jeopardy, and anticipates it will likely incur late and shortage fees or charges from its customers due to the delay in supplying the sodium hypochlorite to its customers. As stated above, a foreseeable consequence of Olin's breach is that Odyssey may also be unable to perform on its various municipal water and wastewater contracts, which will jeopardize the public interest and cause damage to Odyssey for which Olin should be held liable. Odyssey's core strength throughout its more than 23 years of business has been service and reliability, the motto being that "Odyssey always delivers."

61.    In addition, Odyssey and its partners expended in excess of $20 million dollars in purchasing the required sites and installing equipment and storage tanks at rail yards in order to received HyPure® Bleach from Olin via rail car, which method of delivery was mandated by Olin.  In order to obtain other sodium hypochlorite from other sources to make-up for the shortfall caused by Olin's breach of the Contract, Odyssey will need to employ more tanker truck and drivers, and incur associated transportation fees in order to obtain the sodium hypochlorite from such sources around the State.

62.    The interruption and alteration in Odyssey's standard procedures in satisfying its customers' contracts will cause harm to Odyssey's reputation and goodwill built up with its customers over many years. While it will be impossible to quantify the total impact this loss will cause, some aspect of quantification will likely be possible as time passes and Odyssey gathers data on the impact to future sales figures and contract closings and renewals. In addition, the harm will not only negatively impact Odyssey's goodwill and reputation, but will also impact its customers and the public directly, as many of the State's water and wastewater treatment plants rely upon Odyssey for the provision of sodium hypochlorite on a continuous and timely basis. Indeed, the shortage incurred by Odyssey will have a cascading effect even to Florida's tourist industry, as many recreational venues (such as water parks and resort swimming pool) rely upon Odyssey's provision of the sodium hypochlorite to run and keep their facilities open to the public on a daily basis. These customers might seek to recover such losses and damages from

Odyssey, and those are foreseeable damages for which Olin should be held liable to Odyssey.

63.    Although Odyssey does not believe it is possible to obtain the quantity of sodium hypochlorite from other sources needed to completely make up for the shortfall being created by Olin, based on Odyssey's knowledge of pricing of the product in the market, it is able to estimate that it will expend **in excess** of $2,000,000 in covering the shortfall caused by Olin, just for the months of May through October 2023. These figures are merely a rough estimate, to be further determined as time passes and data is obtained, and which figures will continue to increase as the months pass, as the Contract continues until September 30, 2026.

64.    Odyssey has also incurred measurable damages in the past as a result of Olin failing to supply the quantities of HyPure® Bleach requested by Odyssey in certain months, such as August 2022, which in turn has sometimes required Odyssey to obtain sodium hypochlorite from other sources as costs above its contractual price for HyPure® Bleach. Odyssey has also incurred damages, in the form of increased costs, when Olin has improperly invoked the force majeure provision of the Contract, thereby charging Odyssey addition money for the HyPure® Bleach.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter a judgment in favor of Odyssey and against Olin in the amount of damages to be determined at the time of entry of judgment, including lost profits and interest

accrued on such contract damages and thereafter until the judgment is satisfied in full, and grant such other relief as this Court deems just and proper.

Dated: April 28, 2023

/s/ T. Todd Pittenger
T. TODD PITTENGER
Florida Bar No.:  768936
todd.pittenger@gray-robinson.com
Kelly J. H. Garcia
Florida Bar No.: 0694851
kelly.garcia@gray-robinson.com
**GRAYROBINSON, P.A.**
301 East Pine Street, Suite 1400
Orlando, Florida 32801
Telephone:  407/843-8880
*Counsel for Plaintiff*

## VERIFICATION

The undersigned hereby declares under penalty of perjury that the factual allegations set forth in the foregoing Verified Complaint of ODYSSEY MANUFACTURING CO. ("Odyssey") are true and correct, based on the personal knowledge of the undersigned, and are based on the knowledge of employees at Odyssey and on the books and records of Odyssey, and based on publically available information from Odyssey, except that any statement made in the foregoing upon information or belief is believed to be true and correct to the best of my knowledge, information and belief.

Signed in the State of Florida.

Marvin Rakes
President of Odyssey Manufacturing Co.

Sworn to and subscribed before me this 27th day of April, 2023.

_____
Notary Public
My Commission Expires:

X____ Personally Known to Me; or
_____ Produced _____ as identification.

THOMAS TODD PITTENGER
MY COMMISSION # HH 250087
EXPIRES: April 6, 2026