UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ODYSSEY MANUFACTURING CO.,

    Plaintiff,

v.                                                                Case No: 8:23-cv-940-TPB-CPT

OLIN CORPORATION,

    Defendant.
_____/

**ORDER GRANTING IN PART AND DENYING IN PART
PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

This matter is before the Court on Plaintiff Odyssey Manufacturing Co.'s "Motion for Preliminary Injunction" (Doc. 9), filed on May 10, 2023.  Defendant Olin Corporation filed a response in opposition on May 18, 2023.  (Doc. 18).  Odyssey filed a reply on June 16, 2023.  (Doc. 36).  The Court heard initial legal argument on the motion on June 28, 2023.  (Doc. 42).  The Court then held an evidentiary hearing on August 10, 2023.  (Doc. 51).  The Court held a further hearing on August 15, 2023.  (Doc. 55).  Upon review of the motion, response, reply, legal arguments, evidence, the court file, and the record, the Court finds as follows:

**Background**

Odyssey and Olin entered into a 10-year requirements contract under which Olin agreed to deliver and Odyssey agreed to purchase certain quantities of Olin's HyPure® Bleach. (the "Contract," Doc. 9-3, Exh. 1).  Pursuant to the Contract, Olin agreed to sell and supply HyPure® Bleach to Odyssey in amounts requested by

Odyssey 30 days in advance, subject to certain maximum amounts provided in the Contract and to any force majeure events.

The Contract also contains, following the parties' signatures, a set of terms and conditions. These terms and conditions are fully part of the Contract, but the Contract itself provides that in the event of a conflict between these terms and conditions and the terms set forth above the signatures in the body of the Contract, the latter control. Section 2(b) of the terms and conditions provides that Olin may elect to limit the amounts shipped to Odyssey in any month based on the average of the two preceding months. Section 8 addresses force majeure events. Section 11 provides that Odyssey's exclusive remedy for breach is damages, which are limited to so much of the purchase price as is applicable to the portion of the shipment as to which damages claimed. The provision excludes consequential damages.

On April 13, 2023, Olin notified Odyssey that, commencing in May 2023, Olin would invoke section 2(b) of the terms and conditions to limit its monthly supply and delivery of HyPure® Bleach to Odyssey to 1,930 EQW per month.[1] On May 2, 2023, Olin notified Odyssey that it was modifying the monthly quantity of HyPure® Bleach to 2,061 EQW. Odyssey contends that Olin is not permitted to invoke section 2(b) to override the obligation to ship the amount ordered each month. In addition, it is undisputed that Olin has not delivered even these modified quantities in any month from May 2023 to present.

---

[1] In the Contract, "EQW" is a measure roughly equivalent to 2,000 gallons.

Odyssey filed a complaint against Olin seeking specific performance and damages for breach of contract, and it has moved for a preliminary injunction to require Olin to comply with its contractual obligations by shipping the amounts requested each month. On August 7, 2023, after this litigation had commenced, Olin issued a "Notice of Force Majeure for HyPure® Bleach" to Odyssey, citing plant production issues as a reason for the shortfall and invoking section 8 of the Contract's terms and conditions. Odyssey has raised objections to the timing and validity of the force majeure notice.

The Court has received extensive legal briefing on the motion and held multiple hearings, including an evidentiary hearing on August 10, 2023. At that hearing, Odyssey provided further evidentiary support for its claim that Olin's failure to honor its contractual obligations to provide it with bleach pursuant to the Contract was, in turn, jeopardizing Odyssey's ability to supply essential supplies of bleach to numerous municipal water treatment operations throughout the State of Florida. As such, these municipal water treatment operations are likely to have insufficient bleach to treat drinking water and wastewater during the high-demand months of August through October, which in turn could result in state-wide boil water notices.

At the conclusion of the August 10 hearing, Odyssey offered a temporary compromise to resolve the pending motion for injunction without waiving its other claims. Under Odyssey's proposal, Olin would ship to Odyssey the monthly

amounts of bleach for August, September, and October 2023, not to exceed a 2,061 EQW.  Olin has objected to Odyssey's proposal.

## Legal Standard

To obtain a preliminary injunction, a movant must establish: "(1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that entry of the relief would serve the public interest." *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1225-26 (11th Cir. 2005); *see also Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 65-66 (2020). "A preliminary injunction is an extraordinary and drastic remedy, and [the movant] bears the burden of persuasion to clearly stablish all four of these prerequisites." *Wreal, LLC v. Amazon.com, Inc.*, 840 F.3d 1244, 1247 (11th Cir. 2016) (internal quotations omitted).

## Analysis

### *Likelihood of Success on the Merits*

The Court has considered the evidence and argument submitted by the parties and has determined that Olin breached the Contract by invoking section 2(b) of the general terms and conditions to avoid the negotiated quantity terms of the Contract.  The body of the Contract requires Olin to ship the amounts requested by Odyssey, subject to specified maximums and to force majeure events.  Section 2(b) would allow Olin to elect to ship a different, lower amount.  This presents a direct conflict with the body of the Contract, and by operation of the Contract's

provision giving preference to the terms in the body of the Contract, the requirement that Olin ship the requested amount governs. To hold otherwise would effectively nullify, for the duration of the Contract, Olin's obligation to ship the amount ordered each month.

During the pendency of this litigation, Olin invoked the force majeure provisions in the body of the Contract and section 8 of the terms and conditions. The Court first learned of this development during the August 10, 2023, hearing. Force majeure is an affirmative defense on which the party asserting it bears the burden of proof. *Lampo Group, LLC v. Marriott Hotel Servs., Inc.*, No. 3:20-CV-00641, 2021 WL 3490063, at *7 (M.D. Tenn. Aug. 9, 2021).[2] Assuming, without deciding, that the very broad provisions of section 8 apply here, based on the evidence presented by the parties to date, the Court is not persuaded that Olin's shortfalls were "beyond the reasonable control" of Olin as required for force majeure. It appears from the testimony at the hearing that the types of issues at Olin's plants alleged to have resulted in the current shortfalls have also occurred in the past, raising a question as to whether they could have been foreseen and prevented.

Moreover, even if a true force majeure event exists, Olin's exercise of its discretion to determine what is fair and reasonable is necessarily limited by the duty of good faith and fair dealing. *See, e.g., Dick Broad. Co., Inc. of Tennessee v.*

---

[2] The parties agree that Tennessee law governs Odyssey's substantive claims. The procedural aspects relating to injunctive relief are governed by federal law. *Vital Pharms., Inc. v. Alfieri*, 23 F.4th 1282 (11th Cir. 2022).

*Oak Ridge FM, Inc.*, 395 S.W.3d 653, 660-62 (Tenn. 2013) (duty of good faith and fair dealing is imposed on every contract).  Based on the evidence presented to date the Court is not persuaded that Olin's allocations of bleach to Odyssey are based on a good faith determination as to what is fair and reasonable, as opposed to a calculation rooted in its own self-interest and what it believes will be most profitable to itself regardless of the impact its decision will have on Odyssey and, more importantly, on the drinking water supply of millions of citizens throughout the state of Florida.  Even before invoking purported production problems as a reason for reduced shipments, Olin already planned to short Odyssey in favor of other higher-paying customers.  It is also telling that the declaration of Linas Staskevicius, submitted in opposition to Odyssey's motion, argued that Olin stood to lose $1.3 million if required to fulfill its contractual commitments to Odyssey due to the lower purchase price for the product applicable under the Contract.  Under these circumstances, Olin's argument that it has recently suffered an event or events beyond its reasonable control and that it has made and will continue to make a fair and reasonable allocation of this important product deserves careful scrutiny.

For all the foregoing reasons, the Court concludes that Odyssey has shown a substantial likelihood of success on its claim for breach of contract.[3]

---

[3] The Contract provides that Odyssey's sole remedy is for damages, that damages are capped at a portion of the purchase price for the shipment at issue, and that no consequential damages are recoverable.  Odyssey argues these limitations are unenforceable.  Given the urgency of time, the gravity of the potential consequences, and the limited nature of the interim relief provided, the Court declines to resolve these issues at this time.  Olin may, of course, raise these limitations at an appropriate time.

*Irreparable Harm, Balance of Harms, and the Public Interest*

Odyssey has presented evidence that if Olin continues to deliver bleach at the current reduced levels, Odyssey will likely be unable to obtain sufficient bleach from other suppliers to cover its shortfall.  As a result, Odyssey has demonstrated – through affidavits submitted early in the case and live testimony at the hearing on August 10, 2023 – that its customers, including municipal and other utilities throughout the state of Florida, may have insufficient bleach to treat drinking water and wastewater during the high-demand months of August through October, which in turn could result in state-wide boil water notices.  If the Court does not require Olin to deliver some quantity of HyPure® Bleach during these critical months, Odyssey would be threatened with the loss of customers, goodwill, and, indeed, with loss of the ability to continue in business.  These types of losses have been recognized as constituting irreparable harm.  *See, e.g., BellSouth Telecommunications, Inc. v. MCI Metro Access Transmission Servs., LLC*, 425 F.3d 964, 970 (11th Cir. 2005) (holding that "the loss of customers and goodwill is an irreparable injury.") (quoting *Ferrero v. Associated Materials Inc.,* 923 F.2d 1441, 1449 (11th Cir.1991)) (internal quotation marks omitted).  More importantly, hundreds of thousands of citizens throughout the state of Florida could be forced to boil their drinking water as a result of this contractual dispute between two private parties.  Under these circumstances, the Court finds that at least in the near term, the potential harm to Odyssey outweighs the potential harm to Olin, and Olin must allocate its output with respect to its customers as necessary to comply with this

Order.  Finally, the public interest will be served by this Order, in that it will avoid a shortage of bleach needed by utilities throughout the state as just described and avoid a widespread, negative impact on the water supply throughout Florida.

Odyssey has requested that the Court require Olin to supply up to 2,061 EQW to Odyssey through the month of October.  Olin has proposed no alternative number, and the Court finds Odyssey's proposal to be reasonable.  This was the amount Olin said it would supply when it purported to invoke section 2(b) to limit its deliveries earlier this year.  It should be noted that this amount is substantially lower than the average amounts ordered by Odyssey in August and September of 2021 and 2022 (the two-year average ordered in August was 2,394 EQW; the two-year average ordered in September was 2,259 EQW), and only slightly more than the two-year average for October (2,034 EQW).  The Court recognizes that these numbers reflect amounts ordered by Odyssey and not the amounts actually supplied by Olin.  To the extent Olin wishes to propose and justify a different number for the Court's consideration, it may do so at any time in a motion to modify the injunction.

***Bond***

The Court finds that Olin's calculation of revenues it might lose in the event it is required to allocate a greater amount of its output to Odyssey, in the amount of $1.3 million, constitutes a reasonable amount to require as a bond from Odyssey, to protect against damages Olin may suffer from this injunction in the event the injunction is determined to be improperly entered.

## Conclusion

The Court has considered the evidence and arguments submitted by the parties to date and has determined that, based on the record as it exists now, Odyssey has established the requisite factors supporting issuance of a limited preliminary injunction requiring Olin to deliver HyPure® Bleach at the proposed compromise amount of 2,061 EQW at least through the end of October 2023. The exigencies of the situation with respect to Florida's drinking water and wastewater treatment require that the Court make a decision on the existing record. Any additional relief or relief extending beyond October 2023 would require additional factual and legal submissions. To obtain further relief, Odyssey will have to file a renewed motion for preliminary injunction. Conversely, Olin may believe that additional facts not in the current record might change the Court's calculus, and Olin is free to move to dissolve the injunction at any time. Whether Odyssey will be able to make a sufficient showing to support extending injunctive relief beyond that provided here is an open question. But it should be noted that the contractual limitation on remedies in play here is not favorable to Odyssey. Furthermore, once past the peak months, Odyssey should be able to locate sufficient bleach to meet demand from other sources, even if Olin continues to deliver less than what Odyssey orders. In the long term, Odyssey may well have to look for other suppliers or reduce its commitments to its customers so this situation is not repeated.

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED:**

(1)   Odyssey's "Motion for Preliminary Injunction" (Doc. 9) is **GRANTED IN PART** and **DENIED IN PART** as set forth above.

(2)   A preliminary injunction will be entered by separate order.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this <u>16th</u> day of August, 2023.

**TOM BARBER**
**UNITED STATES DISTRICT JUDGE**